IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       )
                               )
            v.                 )
                               )
EMMANUEL KOFI ADUSEI (3)       )        Criminal No. 08-168
HARRY JAMES MITCHELL (4)       )
MATTHEW SOUTHERS (6)           )
ANTHONY DEWAYNE JOHNSON (7)    )
STANLEY JEROME WILSON (9)      )
BERNARD KERLEY (12)            )
KEITH RHODES (13)              )
LAMAR HILL (14)                )
NYAME AMOAH MENSAH (15)        )


O P I N I O N

DIAMOND, D.J.


On April 15, 2008, a grand jury returned a five-count
indictment alleging an international heroin distribution
conspiracy against fifteen defendants. All fifteen were charged
at Count One with conspiracy to distribute and to possess with the
intent to distribute 1 kilogram or more of heroin. Milton Jackson
was charged at all five counts.[1]

---

[1]    In addition to the conspiracy charged at Count One,
Jackson was charged at each of Counts 2-5 with distribution and
possession with the intent to distribute less than 100 grams of
heroin.    Jackson entered a guilty plea to Count One and the
remaining counts were dismissed upon government motion.

Six of the fifteen defendants have either entered guilty pleas or have been dismissed from the case.[2] All nine of the remaining defendants have filed pretrial motions. In all, 51 pretrial motions are pending.

On March 31, 2009, the government filed a consolidated response to the pretrial motions filed by all defendants. In addition, the government submitted to the court for en camera inspection a number of documents, including affidavits and daily logs, relating to the wiretap that is the subject of a number of motions to suppress.

A motions hearing was held on April 22, 2009, for the nine defendants who filed pretrial motions. A supplemental motions hearing as to Adusei's motions was held on June 3, 2009.[3] Adusei's counsel was given until June 17, 2009, to file objections to the government's response to his motion to suppress. On June 15, 2009, the court granted Adusei's motion to adopt the positions of the other defendants regarding the wiretap suppression issue. All of the 51 pending motions now are ripe for adjudication.

---

[2] Guilty pleas to Count One of the Indictment have been entered by Milton Jackson (1), Rodney Thompson (2), Milton Lewis Jackson III (5) and James Smith (11). Count One of the Indictment as to Mario Glanton (8) and as to Al Joseph Owens II (10) was dismissed upon government motion.

[3] In an unfortunate turn of events, Adusei's first two court appointed attorneys both had to be removed from this case for health reasons. Adusei currently is represented by Attorney James Brink who appeared on Adusei's behalf at the supplemental motions hearing held on June 3, 2009.

2

## SUPPRESSION MOTIONS

A number of defendants have filed motions to suppress various types of evidence. Adusei, Wilson, Kerley, Rhodes and Mensah have filed motions to suppress evidence obtained from electronic surveillance. Adusei also has filed a motion to suppress statements he made at the time of his arrest, as well as a motion requesting notice of all evidence "arguably subject to suppression." Finally, Mensah has filed a motion to suppress evidence seized from his vehicle at the time of his arrest.

### 1) **Motion to Suppress Electronic Surveillance Evidence**

Five of the defendants have filed motions to suppress evidence obtained as a result of electronic surveillance of four target telephones, two belonging to Milton Jackson, one to Adusei, and one to Thompson. Between January 23, 2008, and April 18, 2008, thousands of telephone conversations were recorded.

Adusei challenges the electronic surveillance of these phones on three grounds: (1) lack of probable cause; (2) lack of necessity; and, (3) failure to minimize. The remaining defendants challenge the necessity requirement only.

The government has submitted the affidavits in support of the electronic surveillance, as well as the 10-day reports detailing minimization efforts, to the court for en camera inspection, which the court has done.

3

As to Adusei's argument that probable cause was lacking to support the warrants, the government set forth in its response at pages 24-28 the information contained in the warrants establishing probable cause. The court has reviewed that information and is satisfied that the government's summation of those paragraphs of the affidavit is accurate and, based on its review of the affidavits in their entirety, the court finds that adequate probable cause supporting the wiretaps exists in this case.[4]

The crux of all of the motions to suppress electronic surveillance evidence is that the government failed to establish the requisite need for the taps. Specifically, the defendants all argue that the wiretap evidence should be suppressed because the affidavit failed to contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous", as required by 18 U.S.C. §2518(1)(c).

In order to satisfy this requirement, the government need only lay a "factual predicate" sufficient to inform the judge why other methods of investigation are not sufficient. United States

___

[4]   For the sake of brevity, the court will not reiterate herein all of the facts as set forth in the affidavits establishing probable cause in support of the warrant. The affidavits were admitted into evidence at the April 22, 2009, hearing under seal and, as indicated, the government's summation of the relevant paragraphs establishing probable cause is accurate.

4

v. McGlory, 968 F.2d 309, 345 (3d Cir. 1992). On pages 28-44 of its response, the government sets forth in detail the paragraphs of the affidavits in support of the wiretaps which detail other investigative procedures that had been tried or failed or would have been unlikely to succeed in obtaining the information that could be retrieved through a wiretap. Again, the court has reviewed the affidavits and finds that the requisite necessity for the taps has been established.

Finally, Adusei argues that the agents failed to minimize the interceptions and monitoring. Pursuant to statute, every order authorizing the interception of communications "shall contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . . ." 18 U.S.C. §2518(a)(5). The reasonableness of minimization efforts is to be determined under the totality of the circumstances. Scott v. United States, 436 U.S. 128 (1978).

This circuit has recognized that when investigating a wide-ranging conspiracy between parties known for their penchant for secrecy, broader interceptions may be warranted. United States v. Hull, 456 F.3d 133, 142 (3d Cir. 2006). Moreover, the mere number of intercepted, but non-pertinent, calls is not dispositive, Id. at 143, and the statute "does not forbid the interception of all non-relevant conversations." Scott, 436 U.S.

5

at 140.

The court has undertaken an en camera inspection of a number of ten-day reports submitted by the government detailing the efforts that were made in this case to minimize the interception of non-pertinent communications. These reports indicate that reasonable efforts were made to minimize as required by statute and in accordance with the minimization plan contained in the order authorizing the wiretap.

Based on the materials submitted by the government for en camera inspection the court is satisfied that the wiretap was supported by probable cause, that it was necessary, and that sufficient efforts were made to minimize the impact of the wiretap. Accordingly, the motions to suppress electronic surveillance evidence will be denied.

2) **Motion to Suppress Statements**

Adusei has filed a motion to suppress statements he made at the time of his arrest on the ground that the statements were made in violation of Miranda and otherwise were involuntary.

At the hearing held on April 22, 2009, and again at the supplemental hearing held on June 3, 2009, the government indicated that it has no intention of using at trial any statements Adusei made at the time of his arrest. Accordingly, Adusei's motion will be granted.

6

### 3)  **Motion to Suppress Physical Evidence**

Mensah has filed a motion to suppress physical evidence seized from his vehicle at the time of his arrest, specifically, a cell phone and daily planner. The government indicated at the motions hearing on April 22, 2009, that it has no intention of using either the cell phone or the planner, or any evidence derived from either, at the trial. Accordingly, Mensah's motion will be granted.

### 4)  **Motion for Notice of Suppressible Evidence**

Adusei has filed a motion requesting notice from the government of its intention to use any evidence "arguably subject to suppression", including statements, seized objects, eyewitness identifications , statements of co-defendants and co-conspirators, and any electronic surveillance.

In response, the government has provided notice of seven categories of evidence that arguably may be subject to suppression, including evidence obtained from the electronic surveillance of Adusei's telephone, evidence seized from Adusei on the day he was arrested and evidence seized from Adusei's residence on the day he was arrested. The government has complied with Adusei's request and this motion will be granted.

7

## SEVERANCE MOTIONS

Adusei, Mitchell, Rhodes and Mensah have filed motions to sever their trials from that of their co-defendants.

Multiple defendants may be joined in a single indictment pursuant to Fed.R.Crim.P. 8(b), which provides:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed.R.Crim.P. 8(b).

Relief from prejudicial joinder is authorized pursuant to Fed.R.Crim.P. 14, which provides in pertinent part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed.R.Crim.P. 14(a).

The foregoing rule and the jurisprudence developed thereunder reflect "a preference in the federal system for joint trials of defendants who are indicted together, because joint trials promote efficiency and serve the interest of justice by avoiding the scandal and the inequity of inconsistent verdicts." United States v. Balter, 91 F.3d 427, 432 (3d Cir. 1996) (quoting Zafiro v.

8

<u>United States</u>, 506 U.S. 534, 537 (1993) (internal citations omitted).

"In addition, joint trials of defendants charged under a single conspiracy aid the finder of fact in determining the full extent of the conspiracy and prevent the tactical disadvantage to the government from disclosure of its case." <u>United States v. Voigt</u>, 89 F.3d 1050, 1094 (3d Cir. 1996) (internal quotations and citations omitted).

In light of this preference for joint trials, severance under Rule 14 is to be granted "only if there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro</u>, 506 U.S. at 538-39; <u>see also</u> <u>Balter</u>, 91 F.3d at 432; <u>Voigt</u>, 89 F.3d at 1094.

A defendant seeking relief under Rule 14 has the burden to demonstrate that the failure to grant a severance will result in "real not fanciful" prejudice. <u>United States v. Segal</u>, 534 F.2d 578, 583 (3d Cir. 1976). Prejudice cannot be assumed merely because all evidence adduced may not be germane to any particular defendant or because some evidence likely to be admitted may be more damning to one defendant than another. <u>Balter</u>, 91 F.3d at 433 (<u>quoting</u> <u>United States v. Console</u>, 13 F.3d 641, 655 (3d Cir. 1993), <u>cert</u> <u>denied</u>, 511 U.S. 1076 (1994)).

9

Similarly, establishing the mere possibility that evidence may be admitted against one defendant which would be inadmissible against another falls short of the required showing because the potential for certain evidence to be admitted against one defendant and not another is a feature common in all joint trials. United States v. Kenny, 462 F.2d 1205, 1218 (3d Cir.), cert. denied, 409 U.S. 914 (1972).

The government indicates that it will be able to adduce some evidence linking each of the defendants to the conspiracy. It follows then that evidence of other co-conspirators' overt acts may well be admissible against each member of the conspiracy. See United States v. Dickens, 695 F.2d 765, 779 (3d Cir. 1982) (where government presented some evidence linking each defendant to a conspiracy, neither a disparity in the evidence against the particular members nor the introduction of evidence more damaging to one defendant than another warranted relief under Rule 14). Furthermore, none of the defendants has identified any concrete impediment which would inhibit the jury from compartmentalizing the evidence admitted against each defendant where such a distinction is necessary.

As there is no reason to believe that a jury will not be able to compartmentalize the evidence against each of the defendants from the evidence against the others, the defendants have failed to meet their burden of showing the risk of clear and substantial

prejudice. Moreover, any danger that the jury might confuse evidence relating to one defendant but not the others can be prevented with a proper instruction that the jury must give separate consideration to the evidence against each defendant. Zafiro, 506 U.S. at 539 (recognizing that limiting instructions often suffice to cure any risk of prejudice).

Accordingly, the motions for severance will be denied.[5]

## SPEEDY TRIAL MOTION

Mensah has filed a motion requesting a speedy trial under 18 U.S.C. §3164(a) and (b). Pursuant to subsection (a), the trial of a detained person who is being held in detention solely because he is awaiting trial shall be accorded priority. Pursuant to subsection (b), the trial of any such person shall commence not later than 90 days following the beginning of such continuous detention. However, subsection (b) also explicitly states that

---

[5] Several of the severance motions intimate of a potential issue arising under Bruton v. United States, 391 U.S. 123 (1968), in which the Supreme Court held that a defendant's Sixth Amendment right to confront the witnesses against him is violated when a facially incriminating statement of a non-testifying co-defendant is offered into evidence at a joint trial, even if the jury is instructed to consider the statement only as evidence against the defendant who made the statement. In this regard, the government will be required to provide to the court and to counsel for all defendants any statements of any co-defendant before it seeks to admit such statement at trial. This will give the court the opportunity to review the statement and determine whether it can be properly redacted or whether it should be inadmissible. Under these circumstances, any potential prejudice arising from a joint trial will be alleviated.

11

the "periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section."

One such period of exclusion is for a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. §3161(h)(7). In addition, §3161(h)(8) permits a judge to exclude time not otherwise excludable under §3161(h) upon a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

Subsequent to Mensah's filing of his motion for a speedy trial under §3164, the court held a detention hearing on December 15, 2008, following which the court entered an order setting conditions of release. Accordingly, as he no longer is being detained, Mensah's motion for a speedy trial under §3164 is moot.

Morever, to the extent he otherwise alleges a speedy trial violation, due to permissible exclusions authorized under §3161(h), the statutory Speedy Trial clock has not come close to expiring. Mensah has been charged in an international heroin distribution conspiracy with numerous co-defendants. No severance motion has been granted and the time for trial has been tolled as to all of the defendants, all of whom have either pretrial motions pending or have had ends-of-justice continuances in place since at least April 28, 2008. All of these periods of excludable delay

12

attributable to the other defendants apply equally to Mensah. See United States v. Arbelaez, 7 F.3d 344, 346 (3d Cir. 1993) ("'After defendants are joined for trial, an exclusion applicable to one defendant applied to all codefendants.'") Accordingly, the period of delay resulting from Mensah's joinder with his co-defendants is excludable delay pursuant to §3161(h)(7).

In addition, even viewing Mensah in isolation, he himself has had continual ends-of-justice exclusions in place from May 22, 2008, through the filing of his motions on November 17, 2008. In addition, the time in which his current motions have been pending also is excludable delay pursuant to 18 U.S.C. §3161(h)(1)(F). Accordingly, Mensah's motion for a speedy trial will be denied.

## DISCOVERY MOTIONS

### 1) **Bill of Particulars**

Adusei and Rhodes have filed motions for a bill of particulars requesting specific dates, names and addresses of witnesses, and specific acts and statements of themselves or any acts or statements made by others that may be imputed to them.

The purpose of a bill of particulars is to inform the defendant adequately of the nature of the charges brought against him so as to enable him to prepare his defense, to avoid surprise during the trial, and to protect him against a second prosecution for an inadequately described offense. United States v. Rosa, 891

13

F.2d 1063, 1065 (3d Cir. 1989). The granting of a bill of particulars is within the discretion of the district court. United States v. Adams, 759 F.2d 1099, 1113 (3d Cir. 1985).

A bill of particulars, unlike discovery, is not intended to provide a defendant with the fruits of the government's investigation, but is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own defense. United States v. Smith, 776 F.2d 1104 (3d Cir. 1985). Here, the information contained in the indictment is sufficient to place the defendants on notice of that with which they have been charged and to permit them to conduct their own defenses. Requests for the "when, where and how" of any overt acts not alleged in the indictment against them are tantamount to a request for wholesale discovery of the government's evidence which is not a proper purpose for a bill of particulars. See United States v. Armocida, 515 F.2d 49 (3d Cir. 1975).

Moreover, the Assistant United States Attorney has provided copies of the wiretap affidavits to each of the defendants and these affidavits provide more information as to the evidence against each defendant. It long has been recognized that in considering a motion for a bill of particulars, the court may consider any information conveyed to the defendant beyond the allegations of the indictment. Given the state of the record, there is more than adequate information on the particulars of the

14

offense charged against each defendant and, as a result, the motions for a bill of particulars will be denied.

## 2) **Rule 16 Discovery**

Adusei, Mitchell, Johnson, Rhodes and Mensah have filed motions specifically requesting Rule 16 discovery. In addition, a number of the motions filed by the other defendants also seek evidence falling within the purview of Rule 16.

Generally, governmental disclosure of evidence in criminal cases is governed by Fed.R.Crim.P. 16(a)(1). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1), "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act (18 U.S.C. §3500) and materials available pursuant to the "Brady doctrine." Id.

In response to the discovery motions, the government has acknowledged its responsibilities and obligations under Rule 16(a) and the Brady doctrine and has indicated that it intends to comply with those requirements. As the government is cognizant of its obligations under Rule 16 and has stated its intent to comply with the dictates of that rule, the discovery motions will be granted

15

and the following discovery order will be entered:

1) The government shall disclose all <u>Brady</u> exculpatory material forthwith;

2) The government shall disclose all <u>Brady</u> impeachment material and Rule 16(a) material no later than July 27, 2009;

3) The government shall disclose all Jencks material in accordance with 18 U.S.C. §3500(b), but with encouragement to disclose such material no later than July 27, 2009.

3) **Discovery Re: Phone Calls**

Johnson and Rhodes have filed discovery motions relating to the intercepted telephone calls. Specifically, both request that the government provide them with the specific telephone conversations among the thousands of intercepted telephone calls that pertain to them. The government has indicated that it will attempt to do so as best that it can but also notes that it is not in much better position to do so than defense counsel. The government also correctly notes that it is not required to do so under Rule 16.

The court will deny the defendants' discovery motions as to the specific telephone calls pertaining to them. However, the court will encourage the government to assist counsel for Johnson and Rhodes to the extent possible in identifying the phone calls pertaining to those defendants.

4) **Brady Motions**

Kerley, Hill and Mensah have filed motions specifically

16

requesting materials under Brady and its progeny. As already noted, the government recognizes its obligations under Brady and has indicated that it will turn over Brady exculpatory matter forthwith and Brady impeachment material no later than ten days prior to trial. The defendants' Brady motions for release of Brady materials therefore will be granted and the government shall release those materials as set forth in this opinion and the accompanying order.

### 5) **Rule 404(b) Notice**

Seven of the defendants have filed motions requesting that the government disclose any evidence of other crimes, wrongs or acts of uncharged misconduct that the government may seek to offer under Rule 404(b).

Fed.R.Evid. 404(b) permits the admission of evidence of other crimes, wrongs or acts for certain enumerated purposes, provided that, upon request by the accused, the government shall provide reasonable notice in advance of trial of the general nature of any such evidence it intends to introduce at trial. In order to be admissible under Rule 404(b), (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rules 401 and 402; (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice under Rule 403; and (4) the court must charge the jury to consider the

17

evidence only for the limited purpose for which it is admitted. United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002).

The government has acknowledged its responsibility to provide advance notice of the general nature of any other crimes, wrongs or acts it intends to offer at trial but proposes that it be permitted to provide notice under Rule 404(b) ten days prior to trial. Accordingly, the 404(b) motions will be granted and an order will be entered requiring the government to provide notice of the general nature of any Rule 404(b) evidence it intends to offer no later than July 27, 2009.[6]

### 6) **Rule 609**

Kerley and Adusei have filed motions relating to prior convictions under Fed. R. Evid. 609. Kerley has filed a motion to produce a written statement of prior convictions that the government intends to use at trial. Adusei has filed a motion to exclude evidence of prior convictions.

Rule 609(a) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment in excess of one year if the court determines that the probative value of admitting that evidence outweighs the

---

[6] To the extent any of the defendants' motions seek exclusion of Rule 404(b) evidence at this time, the motions will be denied without prejudice as premature.

18

prejudicial effect to the accused, and the rule further provides that evidence that any witness has been convicted of a crime involving dishonesty or false statement shall be admitted regardless of punishment. The only advance notice requirement in Rule 609 is that the government is required to provide "sufficient advance written notice" of its intent to use evidence of a conviction more than ten years old. Fed.R.Evid. 609(b).

In response, the government indicates that it has provided the defendants with their criminal histories and that it will use any qualifying conviction should that defendant testify at trial. Accordingly, Kerley's motion for notice is granted. However, Adusei's motion to exclude evidence of prior convictions will be denied without prejudice to his right to challenge the admissibility of such convictions should he testify at trial.

## 7) **Early Disclosure of Jencks Act material**

Adusei, Johnson, Rhodes and Mensah have filed motions requesting early disclosure of Jencks Act material.

The Jencks Act, 18 U.S.C. §3500(b), requires the government to disclose prior recorded statements of its witnesses, when related to the subject matter of their testimony, after each witness testifies on direct examination. United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). According to 18 U.S.C. §3500(a), "no statement or report in the possession of the United

19

States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection <u>until said witness has testified on direct examination in the trial of the case</u>."

There is no authority by which courts can order the government to provide Jencks Act statements prior to the time a witness has testified on direct examination at trial. Accordingly, the motions for early disclosure of Jencks material will be denied. However, the court will enter an order encouraging the government to provide the defendants with Jencks Act materials by July 27, 2009.

### 8) **James Hearing**

Kerley has filed a motion for a pretrial <u>James</u> hearing to determine the admissibility of statements of his alleged co-conspirators under the exception to the hearsay rule set forth at Fed.R.Evid. 801(d)(2)(E).[7]

In this circuit, there is no authority for holding a separate

---

[7] Pursuant to Rule 801(d)(2)(E), "a statement is not hearsay if ... the statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence: (1) that there was a conspiracy involving the defendant and the non-offering party; and (2) that the statement was made during and in furtherance of the conspiracy. <u>Bourjaily v. United States</u>, 483 U.S. 171, 173-175 (1987).

20

hearing on the admissibility of co-conspirator's statements.  See United States v. Ammar, 714 F.2d 238, 246-47 (3d Cir.), cert. denied, 463 U.S. 936 (1983).  Furthermore, "the control of the order of proof at trial is a matter committed to the discretion of the trial judge," United States v. Gambino, 926 F.2d 1355 (3d Cir.), cert. denied, 501 U.S. 1206 (1991), and it is well settled that a hearing need not be conducted in every case where the government seeks to introduce co-conspirators' statements against a defendant.  Ammar, 714 F.2d at 247.

The government suggests that a pretrial determination as to the admissibility of co-conspirator statements is neither practical nor necessary in this case.  Instead, the court should look to the trial testimony as a whole in determining whether there was a conspiracy, whether the defendant and the declarant were members of that conspiracy and whether the statements were made during and in furtherance of the conspiracy.  The government's position is reasonable and Kerley's motion for a pretrial James hearing will be denied.

### 9)    **Retain Rough Notes**

Adusei has filed a motion to require federal and state agents and law enforcement officers to retain rough notes and writings which may constitute Brady or Jencks materials.  The government has indicated that it is aware of its obligation to retain these

21

materials pursuant to United States v. Ramos, 27 F.3d 65 (3d Cir. 1994), Ammar v. United States, 714 F.2d 238 (3d Cir. 1983) and United States v. Vella, 562 F.2d 275 (3d Cir. 1977). Accordingly, the court will enter an order granting the motion and requiring the government to preserve any such materials.

### 10) **Preserve Evidence**

Adusei has filed a motion requesting that the government be ordered to preserve all evidence in this case. In response, the government indicates that all evidence is being preserved. Adusei's motion will be granted.

### 11) **Plea Bargains, Preferential Treatment, etc.**

Johnson and Rhodes have filed motions specifically requesting notice of plea bargains, preferential treatment and promises made by the government to potential witnesses. In addition, a number of other defendants have made such requests in their general motions for discovery. These motions in effect request Brady impeachment material and will be granted. Given the nature of this case, disclosure of such material by July 27, 2009, will be sufficient to protect the defendants' due process rights and to ensure that trial delay is avoided.

22

## MISCELLANEOUS MOTIONS

### 1) **Motions to Adopt/Join Co-Defendant Motions**

Adusei, Mitchell, Southers, Johnson, Kerley, Rhodes & Mensah all have filed motions to adopt/join the motions filed by their co-defendants. These motions will be granted.

### 2) **Leave to File Additional Motions**

Adusei has filed a motion for leave to file additional pretrial motions. In light of the fact that all of the defendants have had more than ample opportunity to file pretrial motions, and all, including Adusei, have taken advantage of that opportunity, and given that the trial of this matter is scheduled for August 11, 2009, Adusei's motion will be denied.

### 3) **Leave to File Motions Nunc Pro Tunc**

Rhodes has filed a nunc pro tunc motion to allow late filing of pretrial motions. Pretrial motions were due on March 3, 2009. Rhodes filed his motions on March 4, 2009. His motion for leave to file motions nunc pro tunc will be granted.

An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: July 14, 2009

23

cc: Constance M. Bowden
    Assistant U.S. Attorney

    All counsel of record

AO 72
(Rev. 8/82)